JOHNSTONE, Justice
(concurring specially).
I concur with the decision to quash the writ, and I concur with the “cracker” included with our order quashing the writ. I write specially to explain my analysis of one of the defendant’s claims.
Newly discovered evidence establishes that the State (the jail authorities) administered a “toxic” dose of lithium to the defendant three days before the trial, maintained this level of lithium in the defendant until sometime during the first day of trial, discontinued it temporarily, and resumed administering the lithium two days later, still during the trial. At the Rule 32, Ala .R.Crim.P., hearings one of his defense lawyers testified that “as we got into the trial” Nicks acquired and maintained “a blank stare.” (R. 43.) Neither defense counsel nor the trial judge learned about the lithium overdose during the trial.
The defendant claims the lithium overdose rendered him incompetent to stand trial. Such incompetence, if existent, would include the inability to communicate the facts and effects of the lithium overdose itself. Thus, the defendant did not waive the lithium overdose feature of his *927 claim of incompetence by failing to raise it at trial. “[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently ‘waive’ his right to have the court determine his capacity to stand trial.” Pate v. Robinson, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).
The trial judge’s order denying the defendant’s Rule 32 petition suggests that, in the Rule 32 proceedings, the trial judge did not examine or consider what effect the lithium overdose may have exerted on the defendant because the trial judge did not know about the lithium overdose during trial. The trial judge would be bound to consider any legal evidence offered on this topic in the Rule 32 proceedings, Card v. Dugger, 911 F.2d 1494, 1519-20 (11th Cir.1990) (cited in our . order quashing the writ).
The defect in the defendant’s claim now is that, in the Rule 32 proceedings, he did not offer any medical expert testimony to any causal relation between the lithium overdose and the “blank stare” or any expert testimony to the effect, if any, of a lithium overdose on the cognitive functioning of the defendant’s brain. For aught that appears of record, the quantum of lithium in the defendant was identified as an overdose or a “toxic” dose by virtue of its adverse effect on some organ, system, or function thereof other than on the brain and its function.